Judge Minus
delivered the opinion.
Gabriel Min ter bought of James Samuel a negro woman and child, and received a bill of sale warranting the title only, and saying nothing about the sound’ness of the slaves. *481 For them Minter was to pay eight hundred dollars. Two of this sum was paid at the sale-two more shortly after, and tor the balance a note was given, on which Samuel brought suit and recovered judgment. To be relieved against this judgment Minter filed this bill, alledging that the negro woman, at the time of the sale, was diseased by the venereal — and that Samuel, in order to induce him to purchase the slaves, falsely and fraudulently represented that the woman was sound and healthy and never lost a day for sickness, except what was common with pregnant women. That shortly after the sale the negro took worse, with the disease, and lingered with it till she died, after medical aid bad been applied in vaiD. He alledges, that he believes and expects to be able to prove, that she had the disease before she was sold, and Samuel “ cautiously concealed the fact from him,” and that he never would have purchased her had he known it. That shortly after the death of the woman he apprised Samuel of it, and tendered back the child and demanded bis bond for the balance of the purchase money. But Samuel refused to rescind the bargain and sued upon the note. The answer admits the sale, the death of the woman, and the offer to rescind. But he denies that he yet knows, or admits the negro to be unsound at the time of the sale — and also denies any concealment, and contends she was in fact sound and healthy until after the sale. The circuit court perpetuated the injunction decreed that the complainant should restore the child and that the defendant should refund the money received, with a physicians fee, and pay all costs in chancery and at law. From this decree Samuel appealed.
If a bill he bro’t to can* cel a sale, because the state of h’ltli of the subject wts concealed, tho’ no warran ty of soundness is contained in the bill of sale, and the bill contains no express a-rerment that ti e unsoundness was known to the vendor, yet if it contains averments tantamount, it is gocd.
It is contended, as there was no warranty of the health of the slave, that it was essentiafto the relief of the appel-lee, that the appellant should have known the fact of unsoundness at the time of the sale, and that the allegations of the bill are wholly defective in not stating the knowledge of the appellant. It is true the hill is worded loosely and somewhat equivocally in this respect But as it was impossible the appellant could have falsely or fraudulently repre pen ted the contrary, or cautiously concealed the fact unless be knew it, and as the appellant has put the knowledge of the fact in issue, by his answer, it is conceived that the bill is adequate to afford the relief. The case then resolves itself into an enquiry of fact, whether the negro woman was actually unsound at the time of sale. It seems evi *482 dent that about five or Six years before the sale, the woman was affected with the disease and that some of her offspring appeared to expire With some similar compfaint — • ar.d from the advanced stage of the disease, when she became confined, and the opinion of the physicians, it is strongly inferrable that she nad the complaint. But it was discovered that she was affected with some complaint so immediately after the sale, that not much doubt can remain. Add to this the express acknowledgments of the appellant, that he knew she had it, and be sometimes add<‘d that be would not be prevented thereby from getting his money, as he had not warranted her health. Certain it is that he strongly represented her to be sound and never to have been sick except during the stages of pregnancy. It is true that they have proved acts and labor of the woman, strongly conducing to shew both health and vigor of constitution up to, or near, the time of the sale. But while the possibility of her bein'g affected, with the disease, at the same time exists, aad when the disposition, which must exist in all such cases, to conceal the disease, is considered, this proof is reconciliable with the testimony on the other side, and is deemed insufficient to overturn it. We therefore conceive that the court below did right in granting relief by setting the contract aside.
The chancellor in de-cr einp in-ler--⅜, sho’d pursue the course a law judge would adopt if he entertained the suit.
On the assignment of error, ⅛ the details of the decree, we discover but one point worthy of notice. The court below has given current interest from the time of the decree till the money should be paid. It cannot be expected that many ancient authorities could be found settling this question. The practice of giving current interest has been introduced,, in modern times, into courts of common law. Formerly these courts, in the judgment, gave interest only till the date of the judgment. We conceive the best rule to be adopted, on Ibis subject, will be to let equity follow tlie law in this particular and not go beyond it, and then whenever a court of common law could have given the current interest, if such court was possessed of the suit, that a eourt of equity may and ought to give it. On the coiilrarj, where a court of law could not have given it, in the same cause, then it ought to be refused by the chancellor, when adjudicating on the same demand. No doubt that a court of common law could not have given interest in tire present case, and that tile verdict and judgment must have been rendered, containing the interest, in one inclusive a *483 mount, under the denomination of damages. The decree must therefore be affirmed, in all its parts, except, that the court below is directed, on the return of this opinion, to correct the decree so far as to give the interest at the rate of six per centum per annum, up to the date of the decree in that court, and for the residue of the interest the dtcree is reversed, each party to pat his own costs.
Bibb ⅜ Hoggin, for appellant, Pope contra.